# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | | |
|---|---|---|
| **JUAN DIEGO AVILA-ZAVALA,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | Civil Action Number |
| | ) | **2:17-cv-02168-AKK** |
| **DONALD WAYNE SEXTON, ET AL.,** | ) | |
| | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

This action arises out of alleged sexual harassment Juan Diego Avila-Zavala

suffered at the hands of his supervisor, Donald Wayne Sexton, while working at

the Maxine Pratt Mine. Zavala contends that his employers did nothing to stop the

harassment and eventually discharged him after he complained. Zavala asserts

claims against his former employers and several individuals under Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*, Section 1981 of the Civil

Rights Act of 1866 as amended, 42 U.S.C. § 1981, and Alabama state law. Doc.

38.[1] The defendants have moved for summary judgment on all claims except the

---

[1] The defendants are Sexton, ALACO, LLC; David E. Parton, Alaco's managing member
or president; David Parton, Jr., the Mine's chief electrician; Curtis Laws, the Mine
Superintendent; Warrior Investment Company, Inc.; Prospect Mining & Development Co., LLC;
Cordova Resources Management, Inc.; and Ronald Bryant, the President of Warrior and
Prospect. The court refers to Warrior, Prospect, and Cordova as the "Prospect Mining

assault and battery claim against Sexton, arguing that Zavala cannot establish any of those claims or that the Corporate Defendants may be liable for Sexton's alleged misconduct. Docs. 59; 62. For the reasons discussed below, the court finds there are material questions regarding the invasion of privacy claim against Sexton, whether Alaco and Cordova are liable for Sexton's conduct, and whether the defendants' response to the alleged assaults was adequate. Accordingly, the motions for summary judgment are due to be denied as to the invasion of privacy claim against Sexton, and the assault and battery, invasion of privacy, negligent hiring and retention, and negligence/wantonness claims against Cordova and Alaco. The motions are due to be granted in all other respects.

## I. MOTIONS TO STRIKE AND TO HAVE MATTERS DEEMED ADMITTED

Before addressing the motions for summary judgment, the court turns to Zavala's motion to have matters deemed admitted, doc. 69, and the parties' motions to strike evidence they rely on in support of or in response to the motions for summary judgment, docs. 70, 81, 82, 87.

### A. Zavala's Motion to Have Matters Deemed Admitted

Zavala asks this court to deem certain matters admitted against the Prospect Mining Defendants and Bryant based on their alleged failure to respond to requests

---

Defendants," and refers to the Prospect Mining Defendants and Alaco collectively as the "Corporate Defendants."

for admissions.  Doc. 69.  Under Rule 36 of the Federal Rules of Civil Procedure, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney."  Fed. R. Civ. P. 36(a)(3).  In that respect, Zavala contends that he served his requests for admission by email on October 19, 2018 and that the Prospect Mining Defendants and Bryant failed to respond within thirty days.  Doc. 69 at 2.  The Prospect Mining Defendants and Bryant argue that they did not receive the requests when Zavala purportedly served them and that service by email was not proper.  Doc. 77 at 2-3. Indeed, Rule 5(b) does not provide for service by email unless a party consents to it in writing, *see* Fed. R. Civ. P. 5(b), and nothing in the record indicates that these defendants consented to receiving service by email, *see* doc. 17.  Moreover, Zavala did not dispute the defendants' contention that they did not actually receive the discovery requests until December 5, 2018, and that they served their objections within thirty days thereafter.  *See* docs. 77 at 3-4; 77-1 at 2-4, 7-12.  Thus, Zavala's motion to have matters deemed admitted is due to be denied.

### B. The Parties' Motions to Strike

Because motions to strike summary judgment evidence are no longer appropriate, *see* Fed. R. Civ. P. 56(c)(2) advisory committee's notes (2010 amendments); *Campbell v. Shinseki*, 546 F. App'x 874, 879 (11th Cir. 2013), the

court construes the motions as objections to the evidence. Under Rule 56(c)(2), "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence," and "[t]he burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated." Fed. R. Civ. P. 56(c)(2) advisory committee's notes (2010 amendments).

1.    Zavala's objections

Zavala objects to the Prospect Mining Defendants' and Bryant's evidentiary submissions on the grounds that those defendants failed to disclose witnesses and documents as required by Rule 26(a) and (e) or to provide timely discovery responses. Docs. 70; 87. Under Rule 26(a), a party must provide the name of all witnesses "likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses" and a copy or description of all documents "the disclosing party has in its possession . . . and may use to support its claims or defenses . . . ." Fed. R. Civ. P. 26(a)(1). "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion . . . or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

Zavala served Bryant and Warrior with his initial complaint on February 13, 2018, doc. 7 at 11-14, and served Cordova and Prospect Mining with his Amended Complaint on August 13 and 16, 2018, respectively, doc. 40. When Zavala's counsel inquired about the Prospect Mining Defendants' and Bryant's initial disclosures on October 18, 2018, their counsel wrongfully refused to provide the disclosures because of their pending motion to dismiss the claims against them. *See* doc. 78-3 at 2.[2] However, Zavala did not seek relief from the court until December 11, 2018—less than three weeks before the discovery cut-off. *See* doc. 48. And, when Zavala sought such relief, he failed to utilize this court's procedures for resolving discovery disputes. *See id. See also* doc. 20 at 1, 17-19. The Prospect Mining Defendants and Bryant finally provided their initial disclosures the same day they filed their motion for summary judgment and more than one month after the court ruled on their motion to dismiss. *See* doc. 78-4. While significantly untimely, the delay had no impact on Zavala, who opposed these Defendants' motion for summary judgment without submitting a Rule 56(d) affidavit or declaration asserting a need for additional discovery. *See* docs 71; 72. As a result, the court finds that the Prospect Mining Defendants' and Bryant's failure to timely disclose witnesses and documents as required by Rule 26(a) was harmless, and Zavala's motions to strike, docs. 70 and 87, are due to be denied.

---

[2] A motion to dismiss does not suspend a party's obligation to provide initial disclosures. *See* Fed. R. Civ. P. 26.

## 2. The Defendants' Objections

The Defendants object to certain evidence Zavala submitted in opposition to summary judgment, including an affidavit, declaration, and unsworn statement from a witness, arguing that the evidence contains inadmissible hearsay, is beyond the scope of the witness's personal knowledge, and is conclusory. Docs. 81 at 2-3; 82. To begin, because the court's role at summary judgment is to require the non-movant to show "that []he can make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that a genuine issue of material fact exists," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), there is a difference between considering evidence that does not strictly conform to the rules of evidence, at least as presented, but has some probative value and a conclusory statement that lacks any indicia of reliability at all. Next, declarations and affidavits opposing summary judgment "must be based on personal knowledge [and] set out facts that would be admissible in evidence . . . ." Fed. R. Civ. P. 56(c)(4). But, "a district court may consider a hearsay statement in passing on a motion for summary judgment if the statement could be reduced to admissible evidence at trial or reduced to admissible form." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1293-94 (11th Cir. 2012) (quotation omitted). In addition, the law is clear that "conclusory allegations" in a declaration or affidavit opposing summary judgment "'have no probative value.'" *Hamilton v. Sikorsky Aircraft*

*Corporation*, 760 F. App'x 872, 877 (11th Cir. 2019) (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000)). With these principles in mind, consideration of the challenged evidence does not change the court's analysis, and the defendants' motions to strike, docs. 81 and 82, are due to be denied as moot.[3]

## II.    STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The moving party bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. The burden then shifts to the nonmoving party, who is required to "go

---

[3] The Prospect Mining Defendants and Bryant also object to certain exhibits Zavala cites in opposition because Zavala purportedly failed to disclose them or produce them in response to Alaco's discovery requests. Doc. 82 at 10-11. However, the Prospect Mining Defendants and Bryant have not even attempted to show any prejudice based on the untimely disclosure. *See* doc. 82. Thus, the court finds that Zavala's untimely disclosure is harmless and overrules the defendants' objection to the evidence. *See* Fed. R. Civ. P. 37(c)(1). Moreover, in violation of Rule 26, the Prospect Mining Defendants and Bryant refused to provide any disclosures to Zavala until the day they filed their summary judgment motion, and never supplemented their responses to Zavala's discovery requests as required by Rule 26(e). In light of these Defendants' complete disregard for their obligations under the rules, it strains credulity for them to seek to strictly enforce the rules against Zavala.

beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (citation and internal quotation marks omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

On summary judgment motions, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970). *See also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Moreover, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252).

## III. RELEVANT FACTUAL BACKGROUND[4]

### A. <u>Operation of the Maxine Pratt Mine</u>

Warrior developed and operated the Maxine Pratt Mine (the "Mine") in Jefferson County, Alabama for underground coal mining. Doc. 63-6 at 2-3. Warrior entered into a contract with the Hispanic Employment Labor Pool, Inc. ("HELP"), pursuant to which HELP provided employees to work at the Mine. Docs. 60-2 at 2; 63-6 at 3-11. Under the terms of the contract, all these individuals "shall be considered to be solely the employees or subcontractors of HELP . . . ." Doc. 63-7 at 6. The contract also provides that if Warrior "is dissatisfied with the performance of any of HELP['s] employee(s) for any reason at any time, Warrior [] will have the option to replace any employee of HELP [] at any time." Doc. 63-7 at 4. According to Bryant, Warrior's President, Warrior did not have authority to discharge employees and could only request that HELP not assign certain employees to work at the Mine, or refer employees back to HELP. Doc. 63-6 at 3. Bryant also contends that the employees HELP provided received their paychecks and benefits from HELP. Doc. 63-6 at 6.

In 2015, Warrior decided to stop mining coal and to only process and sell coal from the Mine. Doc. 63-6 at 3. Accordingly, Warrior closed the coal mining

---

[4] The facts recited are those the parties supported with citation to evidence and are presented in the light most favorable to Zavala. Zavala did not provide citations for most of the allegedly undisputed material facts in his opposition brief, *see* doc. 72 at 4-5, and those alleged contentions are, therefore, not properly before the court.

operation in October 2015 and discharged the Mine's employees. *Id.* Around that time, Bryant approached Parton, the managing member or President of Alaco, and asked Parton to help him re-open the Mine. Doc. 60-2 at 1. About a month later, Alaco reopened and began operating the Mine. Doc. 63-6 at 4. Alaco and Warrior executed a formal, written agreement on January 2, 2016 for Alaco to take over the Mine's underground coal mining operations. *Id.* Through the end of March 2016, however, Warrior continued to handle the payroll and provide benefits for the employees who worked at the Mine, and Alaco in turn reimbursed Warrior. Doc. 60-2 at 2. Beginning in April 2016, Cordova provided payroll to Alaco's employees at the Mine. Docs. 63-6 at 5-6; 60-2 at 2-3. Additionally, to facilitate a labor contract between Alaco and Cordova, Cordova issued stock shares to the principals of Alaco. Doc. 63-9.

After Alaco began operating the Mine, Warrior and Bryant no longer had responsibility for supervising any of the coal mining employees. Consequently, Bryant informed Jesse Hernandez, the President of HELP, that he would need to contact Alaco or Parton about issues relating to the contract and HELP employees who work at the Mine. Doc. 63-6 at 4-5. However, based on the record before the court, the contract between Warrior and HELP did not change after Alaco took over operations, and HELP continued to supply employees to work in the Mine

pursuant to its contract with Warrior.  *See* doc. 63-7.  HELP invoiced Warrior for the employees it provided, and Alaco would reimburse Warrior.  Doc. 39-11 at 4.

In May 2016, Warrior merged into Prospect, and after the merger Prospect changed its name to Prospect Mining and Development Company, LLC.  Doc. 63-6 at 6-7.

### B.    Zavala's Relevant Work History and the Alleged Harassment

Zavala, a Hispanic man, worked on the night shift in the Mine as an employee of HELP from April 2013 until October 2016.  Docs. 60-1 at 1; 60-2 at 2.  *See also* doc. 63-3.  During that time, Zavala reported to Sexton, the night shift foreman. Sexton in turn reported to Laws, the Mine Superintendent, and Parton Jr. worked as the Mine's chief electrician.  Docs. 60-2 at 2; 60-3 at 1-2; 60-4 at 1-2; 75-1 at 2.  All three—Sexton, Laws, and Parton—were employed by Cordova during the relevant time.  Docs. 60-3 at 2; 60-4 at 2.[5]

According to Zavala, Sexton made sexual verbal advances and used sexually explicit language beginning in May 2016 before the alleged harassment escalated to inappropriate physical attacks.  Doc. 75-1 at 3.  One such alleged incident occurred in early June 2016 while Zavala was laying on the Mine's floor during a break.  Allegedly, Sexton stood over Zavala, grabbed Zavala by the hips, and

---

[5] The Prospect Mining Defendants contend that Alaco employed Sexton during the relevant time and that Cordova only "provid[ed] payroll to the employees of Alaco who worked at the [] Mine."  Docs. 63-6 at 4; 63-11 at 3, 5.

"forcefully started hunching on [Zavala] repeatedly rubbing his genitalia on top of [Zavala's] genitalia" with force. *Id.* at 4. During this assault, Sexton forcefully restricted Zavala's movement, causing Zavala to fight to free himself. *Id.* The next day, Zavala reported the incident and the prior verbal harassment to Laws, who said he would report it to Parton, Alaco's President. *Id.* Zavala contends that Laws did nothing in response, and that Sexton assaulted him again a few weeks later. *Id.* During this incident, Sexton climbed on Zavala's back while Zavala laid on the mine's floor to stretch during a break, held Zavala's hips, rubbed his genitalia forcefully against Zavala, and "used profane language." *Id.*

Because Zavala contends that "the Mine Employers were not taking any action to stop Sexton," he reported the assaults to Hernandez approximately a month after the second incident. *Id.* at 4-5. Hernandez in turn called Parton to discuss Zavala's complaint, and, according to Hernandez, Parton took the matter seriously. Doc. 63-4 at 2. Parton attests that Hernandez informed him of only one alleged assault and that after Hernandez's call, he immediately confronted Sexton, who denied assaulting Zavala. Doc. 60-2 at 4. *See also* doc. 60-3 at 2. Parton then asked Laws to speak to other miners on the night shift, and Parton understood from Laws that none of the other miners witnessed or knew about the alleged assault. Doc. 60-2 at 4. For his part, Laws attests that he spoke to more than three miners and that none of them witnessed the alleged assault or any other

inappropriate conduct. Doc. 60-4 at 3. Subsequently, Parton cautioned Sexton "that there should not be any type of future conduct that someone may consider harassment." Doc. 60-2 at 4. Parton then contacted Hernandez to report that the Mine addressed the matter and that things were under control. Doc. 63-4 at 2.

Zavala has a different view of the defendants' response. According to Zavala, the defendants and HELP did nothing to respond to his complaints or to stop Sexton's conduct. Doc. 75-1 at 5. In particular, Zavala attests that the defendants did not ask him about the alleged assaults, a fact that Parton and Laws concede, or place Sexton on probation. *Id.* at 5. *See* docs. 60-2; 60-4.

Another miner, Adolfo Garcia, who witnessed Sexton assault Zavala, maintains that Parton and Laws did not ask him about Sexton's behavior. Doc. 75-2 at 6-7.[6] Garcia attests that Sexton harassed other Hispanic employees, including Garcia and his brother, Jorge Garcia. *Id.* at 7. Presumably, Garcia would have reported this alleged conduct if Parton and/or Laws had interviewed him.

According to the Defendants, on November 1, 2016, Zavala walked out of the Mine during his shift without informing Sexton in violation of company safety policy. Docs. 60-2 at 5; 60-4 at 3; 63-4 at 3. Zavala maintains that he left the Mine to conduct a required check of his dust pump, and that both Parton and

---

[6] Jorge Garcia states that Sexton "was always playing around and touching my rear-end without me participating in it." Doc. 75-6 at 3. Because Garcia is available to testify at trial, the court may consider the statement even though it is not a sworn declaration or affidavit.

Sexton knew he was leaving to conduct the check. *See* doc. 75-1 at 7-8. Zavala attests that when he told Sexton he needed to check his dust pump, Sexton replied, "'F*** you and your dust-pump." Doc. 75-1 at 8.

Based on Zavala's purported safety violation, Laws asked Hernandez to reassign Zavala to a different employer. Docs. 60-2 at 5; 60-4 at 4; 63-4 at 3. Thereafter, Zavala filed charges of discrimination against the Mine, Alaco, and HELP, alleging discrimination on the basis of sex and national origin and retaliation. In the charges, Zavala asserted that Sexton sexually harassed him on two occasions, harassed Adolfo and Jorge Garcia, and was upset that Zavala had complained. Docs. 22-1; 22-2; 63-1; 63-2; 63-5. This action followed.

## IV. ANALYSIS

Zavala asserts claims for sexual harassment under Title VII, race discrimination and retaliation under Section 1981, and state law claims based on the alleged harassment. Doc. 38. The court turns to the parties' contentions related to each claim after first addressing whether the Corporate Defendants may be considered as a single employer or joint employers for purposes of Title VII and Section 1981.

### A. Whether the Corporate Defendants Qualify as a Single Employer or Joint Employers

Zavala contends that the Corporate Defendants, Parton, Parton, Jr., Laws, and Bryant acted as his joint employers. Docs. 74 at 12-15; 75-1 at 2. Alaco

concedes the existence of a question of fact regarding whether the Corporate Defendants qualify as joint employers, doc. 80 at 2, but the Prospect Mining Defendants argue that they are entitled to summary judgment on this issue because they had no control over the Mine employees during the relevant period, doc. 64 at 14-17. For the reasons discussed below, the court disagrees.

"Consistent with the purposes of [Title VII] [the Eleventh Circuit] interpret[s] the term 'employer' liberally." *Virgo v. Riviera Beach Assocs. Ltd.*, 30 F.3d 1350, 1359 (11th Cir. 1994). Accordingly, "where two ostensibly separate entities are highly integrated with respect to ownership and operations, [the Eleventh Circuit] may count them together [as a single employer] under Title VII." *Peppers v. Cobb County, Georgia*, 835 F.3d 1289, 1298 (11th Cir. 2016) (quoting *Lyes v. City of Riviera Beach, Fla.*, 166 F.3d 1332, 1341 (11th Cir. 1999)). Additionally, "'where "two entities contract with each other for the performance of some task, and one company retains sufficient control over the terms and conditions of employment of the other company's employees, [the Eleventh Circuit] may treat the entities as 'joint employers' . . . ." *Id.*[7] "[T]he joint employer concept recognizes that the [companies] involved are in fact separate but

---

[7] "A 'joint employer' relationship is different from, though sometimes confused with, a 'single employer' situation." *Virgo*, 30 F.3d at 1359 n.6. In this case, it is unclear if Zavala intended to assert that the Corporate Defendants may have acted as a single employer by alleging that the Corporate Defendants operated and managed the Mine together "under a business venture to exploit and/or administer the business of the Mine jointly." *See* doc. 38 at 6. Thus, the court addresses both the single and joint employer concepts.

that they share or co-determine those matters governing the essential terms and conditions of employment." *Virgo*, 30 F.3d at 1360 (quoting *Nat'l Labor Relations Bd. v. Browning-Ferris Indus.*, 691 F.2d 1117, 1122 (3d Cir. 1982)). Courts in the Eleventh Circuit evaluate the following eight factors when evaluating whether two or more companies may be considered joint employers:

> (1) the nature and degree of control of the workers; (2) the degree of supervision, direct or indirect, of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and payment of wages; (6) ownership of facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.

*Layton v. DHL Exp. (USA), Inc.*, 686 F.3d 1172 (11th Cir. 2012). Finally, whether a company retains sufficient control to be considered a joint employer is a question of fact. *Virgo*, 30 F.3d at 1360 (citation omitted).

The specifics here militate in favor of finding single and joint employer status. To begin, Warrior, which had merged with Prospect during the relevant time, holds the lease on the Mine, invested in equipment and the development of the Mine, and had an agreement with Alaco regarding operation of the Mine. *See* docs. 63-6 at 2, 4, 6; 63-8. And, while Alaco operated the Mine, Cordova handled the payroll, and Bryant, the President of Warrior, is also the Director and a shareholder of Cordova. *See* doc. 63-9 at 2. In addition, Cordova entered into a "labor contract" with Alaco, and to facilitate that contract, Cordova issued stock

16

shares equal to a 49% interest to the principals of Alaco. Doc. 63-9 at 2. Thus, "Cordova [] was owned by the individuals who were [] also the owners of Warrior [] and Alaco." Doc. 63-6 at 6. Moreover, although Alaco purportedly controlled the day-to-day operations of the Mine, during the entire relevant period, Warrior contracted with HELP for employees to work at the Mine, and under the express terms of the contract, Warrior retained control to refer any of the assigned employees it no longer wanted back to HELP. *See* docs. 63-6 at 3; 63-7. HELP in turn invoiced Warrior for the employees it provided, and Alaco reimbursed Warrior for the expense. Doc. 63-11 at 4-5. These facts indicate that the Corporate Defendants had interrelated operations and common ownership, which supports a finding that they acted as a single employer for purposes of Title VII and § 1981. *See McKenzie v. Davenport-Harris Funeral Home*, 834 F.2d 930, 933 (11th Cir. 1987).

Next, although the record shows that HELP employed Zavala and issued his paychecks, HELP assigned Zavala to work at the Mine. *See* docs. 63-3; 75-1. Sexton supervised Zavala and directed the work inside the Mine during Zavala's shift, and Laws supervised Sexton and was responsible for employee safety at the Mine. Doc. 60-2 at 3; 60-3 at 2; 60-4 at 2-3. Laws also had authority to discharge Zavala by referring him back to HELP for reassignment. *See* doc. 60-4 at 4. Thus, Cordova, through its employees Laws and Sexton, had the authority to control

Zavala's day-to-day work and to at least co-determine essential terms and conditions of his employment. Alaco also had authority to control day-to-day operations at the Mine and to hire and discharge employees, *see* doc. 63-6 at 4, and Parton signed a check on behalf of Alaco to pay Zavala for work in May 2016, and Laws signed several checks to Zavala on behalf of Alaco, which Zavala contends were payment for work performed, docs. 75-1; 75-5. Finally, as mentioned above, Warrior held the lease on the Mine, invested in the Mine's development and equipment, and, in connection with Zavala's workers' compensation claim arising from a September 2016 injury, Warrior agreed to settle the claim as Zavala's employer. *See* doc. 75-4 at 3-6. This evidence, viewed in the light most favorable to Zavala, weighs in favor of finding that the Corporate Defendants acted as joint employers for purposes of Title VII and § 1981.

In summary, based on the evidence, Warrior and Prospect have not shown there are no questions of material fact regarding whether they may be considered Zavala's employers for purposes of liability under Title VII and § 1981. As a result, they are not entitled to summary judgment on this issue.

**B.**     **Title VII Sexual Harassment Claims (Count I)**

Zavala asserts Title VII claims against Alaco for alleged sexual harassment. Doc. 38 at 11-13.[8] To prevail on his claims, Zavala must show: (1) that he belongs to a protected group, (2) that he was subject to unwelcome sexual harassment, (3) that the harassment was based on his sex, (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of his employment and create a discriminatorily abusive working environment, and (5) a basis for holding Alaco liable. *Mendoza v. Borden, Inc.*, 195 F.3d 1238, 1245 (11th Cir. 1999) (citing *Henson v. City of Dundee*, 682 F.2d 897, 901 (11th Cir. 1982)). At this juncture, the first, second, and fifth elements are not in dispute, but Alaco argues that Zavala cannot establish that the alleged harassment was based on sex or that the harassment was sufficiently severe or pervasive. Doc. 61 at 9-10.

"Same-sex harassment is actionable provided that the harassment was based on the sex of the employee." *Stancombe v. New Process Steel LP*, 652 F. App'x 729, 733 (11th Cir. 2016) (citing *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 79 (1998)). A male plaintiff may show that same-sex harassment is based on sex by showing (1) "credible evidence that the harasser was homosexual," (2) "the harasser is motivated by general hostility to the presence of [men] in the workplace," or (3) "direct comparative evidence about how the alleged harasser

---

[8] The court previously dismissed as untimely the Title VII claims asserted against the Prospect Mining Defendants. Doc. 54 at 5-7.

treated members of both sexes in a mixed-sex workplace." *Oncale,* 523 U.S. at 80.

"The fact that the conduct was sexual in nature is not sufficient on its own to show

that it was motivated by sexual desire, because 'general vulgarity or references to

sex that are indiscriminate in nature will not, standing alone, generally be

actionable.'" *Stancombe*, 652 F. App'x at 734 (citing *Reeves v. C.H. Robinson*

*Worldwide, Inc.*, 594 F.3d 798, 809 (11th Cir. 2010) (en banc)).

Here, Zavala asserts that Sexton sexually assaulted him on two occasions by

simulating sexual acts while restraining Zavala and using profane language. By its

very nature, this alleged conduct is sexual in nature. But, that alone is not

sufficient to prove that Sexton's conduct was motivated by sexual desire. *See*

*Stancombe*, 652 F. App'x at 734. The court must look to other evidence to see if

Sexton's conduct qualifies. In that respect, Zavala alleges also that Sexton made

sexual verbal advances and used sexually explicit language at work in the month

before Sexton assaulted him, but he does not provide details regarding what Sexton

allegedly said in those instances or how frequently they occurred. Doc. 75-1 at 3.

In addition, Zavala has not provided any evidence suggesting that Sexton is

homosexual, was motivated by a hostility towards men in the workplace, or that he

treated men differently than women in the workplace (assuming there were even

female employees at the Mine). *See* docs. 74 at 15-17; 75-1. And, Zavala did not

directly dispute Sexton's affidavit testimony that Sexton is heterosexual, that he

purportedly has no hostility towards men, and did not treat male employees differently than female employees. *See* docs. 60-3 at 1-2; 74 at 15-17. Consequently, although Sexton's alleged conduct is vulgar, despicable, and has no place in a workplace, Zavala's sexual harassment claim fails because he did not create a question of material fact regarding whether the alleged harassment by Sexton was based on Zavala's sex or "amounted to discrimination because of sex." *Stancombe,* 652 F. App'x at 734 (citing *Oncale*, 523 U.S. at 81). Put differently, Zavala has not shown male employees at the Mine "'are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'" *Reeves*, 594 F.3d at 809 (quoting *Oncale*, 523 U.S. at 80). Thus, even though the court disagrees with the defendants that the two alleged assaults here failed to rise to the requisite level of severity or pervasiveness,[9] summary judgment is due on the Title VII sexual harassment claim.

## C.    Section 1981 Claims (Count II)

Zavala asserts § 1981 claims against the Corporate Defendants based on his allegation that they ignored his claims of sexual harassment because he is Hispanic

---

[9] "Either severity *or* pervasiveness is sufficient to establish a violation of Title VII." *Reeves*, 594 F.3d at 808 (emphasis in original) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 743 (1998)). Consequently, one or two severe instances, such as the alleged assaults at issue here, may satisfy the severe or pervasive element of a sexual harassment claim.

and retaliated against him after he reported the harassment.  Doc. 38 at 13-14.[10]

The court addresses these claims in turn.

1.    Disparate Treatment Claims

Because Zavala relies on circumstantial evidence to prove his § 1981 claims, the court applies the burden-shifting framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), and *Texas Dep't. of Community Affairs v. Burdine,* 450 U.S. 248 (1981).  *See Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1330-31 (11th Cir. 1998).  Under that familiar framework, Zavala bears the initial burden of establishing a prima facie case by showing he is a "qualified member of a protected class and was subjected to an adverse employment action in contrast to similarly situated employees outside [his] protected class."  *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010) (citation omitted).  If he satisfies this burden, the burden shifts to the Defendants to produce a legitimate, non-discriminatory reason for the challenged action.  *Id.*  If they

---

[10] In his opposition brief, Zavala appears to contend that Sexton sexually harassed him because of his Hispanic ethnicity.  Doc 74 at 18.  But, Zavala cannot amend his complaint through his brief in opposition to summary judgment.  *See Miccosukee Tribe of Indians of Florida v. U.S.*, 716 F.3d 535, 559 (11th Cir. 2013).  Also, the Prospect Mining Defendants argue they are entitled to summary judgment on Zavala's § 1981 discriminatory discharge and hostile work environment claims.  *See* doc. 64 at 18-21.  Because Zavala is represented by counsel and does not plead a discriminatory discharge or hostile work environment claim under § 1981, *see* doc. 38, the court does not address the Prospect Mining Defendants arguments related to discriminatory discharge and hostile work environment claims.

articulate such a reason, the burden shifts back to Zavala to prove that the proffered reason is pretextual.  *Id*.

Zavala asserts that the Defendants responded to complaints by white employees, while ignoring complaints made by Hispanics, but Zavala did not identify any employee outside his protected class that the defendants treated differently.  Doc. 75-1 at 7.  *See also* doc. 74 at 18-19.  Zavala also did not specify any complaints by white employees that the Corporate Defendants investigated. *See* docs. 74; 75-1.[11]  Thus, Zavala cannot show that Defendants treated similarly-situated employees outside his protected class more favorably with respect to workplace complaints, and he cannot establish his prima facie case of discrimination.  *See Lewis v. City of Union City, Georgia*, 918 F.3d 1213, 1220-21 (11th Cir. 2019) (en banc).

Zavala's "failure to produce a comparator does not necessarily doom [his] case," if he can present a "triable issue of fact" through "a convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).  Here, however, the only evidence of discrimination are Zavala's and Garcia's allegations that Sexton only harassed Hispanic employees and that the Corporate Defendants

---

[11] Zavala notes that the Alaco Defendants mentioned in their summary judgment briefing that Cameron Hogg (a white male) argued with Zavala about a lollipop, doc. 72 at 13, but there is nothing to suggest that Hogg made a complaint against Zavala or any other Mine employee, or that the Corporate Defendants investigated any such complaint, *see* docs. 60-2 at 3; 60 at 3.

only investigated complaints by White employees. *See* docs. 74; 75-1; 75-2. But, "conclusory allegations without specific supporting facts have no probative value." *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). Therefore, those allegations are not sufficient to allow a fact finder to reasonably infer intentional discrimination. As a result, Zavala's disparate treatment claim fails.

2.  Retaliation

Next, Zavala asserts that the Corporate Defendants retaliated against him after he complained about Sexton by increasing his work load and ultimately discharging him. Doc. 38 at 14. To prevail on these claims, Zavala must first establish a prima facie case by showing "that he engaged in statutorily protected activity, he suffered a materially adverse action, and there was some causal relation between the two events." *Butler v. Alabama Dep't of Transp.*, 536 F.3d 1209, 1213 (11th Cir. 2008) (quotation omitted). To satisfy the adverse action element, Zavala must show that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Satisfying the causation element requires Zavala to prove that but-for the employer's desire to retaliate, he would not have suffered the adverse employment actions. *See Booth v. Pasco Cnty.*, 757 F.3d 1198, 1207 (11th Cir. 2014) (citing *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 363 (2013)). He can prove this through "sufficient evidence that the decision-maker

24

became aware of the protected conduct, and that there was a close temporal proximity between this awareness and the adverse action." *Shotz v. City of Plantation, Fla.*, 344 F.3d 1161, 1180 n.30 (11th Cir. 2003) (citation and alteration in original omitted). "But mere temporal proximity, without more, must be very close." *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007).

Turning first to the workload claim, Zavala attests that "Sexton imposed on [him a] heavier job load and working hours" in retaliation for complaining about the alleged assaults. Doc. 75-1 at 5. But, Zavala does not specify how his job load and hours increased, or refute the Defendants' evidence that Zavala's work assignment at the Mine never changed. *See id.*; docs. 74 at 18-19; 60-3 at 2; 60-4 at 2. Thus, Zavala's conclusory testimony is not sufficient to create a question of material fact regarding whether the alleged increased work load is a materially adverse action. *See Leigh*, 212 F.3d at 1217.

Next, as to the discharge, the Corporate Defendants argue that Zavala cannot show causation. Docs. 61 at 15-16; 64 at 23. Zavala complained to Laws about the alleged harassment in early June 2016, and complained to HELP two months later. Doc. 75-1 at 4-6. The Corporate Defendants discharged Zavala, or referred him back to HELP on November 2, 2016, five months after Zavala first complained, and approximately three months after his second complaint. *See* docs. 60-5 at 5; 60-4 at 3-4. This temporal proximity is not sufficient to raise an

inference of causation, *see Thomas*, 506 F.3d at 1364; *Williams v. Waste Mgmt., Inc.*, 411 F. App'x 226, 229 (11th Cir. 2011), and critically, Zavala has not pointed to any other evidence to suggest a causal connection between his complaints and his discharge, *see* docs. 74; 75-1.  Moreover, Zavala has not directly disputed Bryant's testimony that Warrior and Prospect had no knowledge of his complaints before his discharge.  *See* doc. 63-6 at 7.  "A decision maker cannot have been motivated to retaliate by something unknown to him."  *Brungart v. BellSouth Telecomm., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000)).  As a result, Zavala has not established a prima facie case of retaliation with respect to his discharge, and the Corporate Defendants are entitled to summary judgment on these claims.

### D.  <u>State Law Claims (Counts III-VIII)</u>

Zavala also asserts state law claims for:  (1) sexual assault and battery, (2) invasion of privacy, (3) outrage, (4) negligent hiring and retention, (5) breach of implied contract and warranty, (6) negligence and wantonness and (7) wrongful discharge.  *See* doc. 38.  The court addresses each of these claims in turn.

#### 1.  <u>Sexual Assault and Battery (Count III)</u>

Zavala pleads this claim against Sexton and the Corporate Defendants. Under Alabama law, "an assault consists of 'an intentional, unlawful, offer to touch the person of another in a rude or angry manner under such circumstances as to create in the mind of the party alleging the assault a well-founded fear of an

imminent battery, coupled with the apparent present ability to effectuate the attempt, if not prevented.'" *Peterson v. BMI Refractories*, 132 F.3d 1405, 1412-13 (11th Cir. 1998) (quoting *Allen v. Walker*, 569 So. 2d 350, 351 (Ala. 1990)). "A successful assault becomes a battery, which consists of the touching of another in a hostile manner." *Wright v. Wright*, 654 So. 2d 542, 544 (Ala. 1995) (citing *Surrency v. Harbison*, 489 So. 2d 1097, 1104 (Ala. 1986) (citations omitted). "An actual injury to the body is not a necessary element of a civil assault and battery." *Surrency*, 489 So. 2d at 1104. In the sexual harassment context, the Supreme Court of Alabama has recognized a battery claim when the defendant intentionally touched the plaintiff in a sexually suggestive manner, and where the touching was unwelcome. *See Ex Parte Atmore Comm. Hosp.*, 719 So. 2d 1190, 1194 (Ala. 1998) (citation omitted).

The record before the court shows that there is at least a question of material fact regarding Zavala's assault and battery claim against Sexton based on Zavala's affidavit testimony. *See* doc. 75-1 at 4. But, to hold the Corporate Defendants vicariously liable for the Sexton's intentional torts, Zavala must first establish that Sexton was their agent or employee. *See Ware v. Timmons*, 954 So. 2d 545, 549 (Ala. 2006) ("'To recover against a defendant under the theory of respondeat superior, it is necessary for the plaintiff to establish the status of employer and employee—master and servant.'") (quoting *Hendley v. Springhill Mem'l Hosp.*,

575 So. 2d 547, 550 (Ala. 1990)).  In that respect, each of the Corporate Defendants contends that it cannot be liable for Sexton's conduct because it did not employ Sexton during the relevant time.  *See* docs. 61 at 2, 19; 64 at 16-17, 25; 80 at 7.  But, that is nonsensical because Sexton indisputably worked at the Mine and nothing suggests he worked as an independent contractor.  Nevertheless, Zavala has not produced any evidence to dispute the evidence that Warrior and Prospect no longer employed Sexton as of 2014 or March 31, 2016.  *See* docs. 60-2 at 2; doc. 63-11 at 3.[12]  Accordingly, because there is no evidence to indicate that Warrior and Prospect employed Sexton, or that Sexton acted as their agent, during the relevant time, these defendants cannot be vicariously liable for Sexton's alleged conduct.[13]

As to Alaco and Cordova, despite the close relationship between Warrior, Alaco, and Cordova, the parties incredibly all claim ignorance on the identity of

_____

[12] According to Tammy Songer, Warrior's former comptroller, Sexton quit working for Warrior in 2014, and Alaco "rehired" him in December 2015, doc. 63-11 at 2-3, and Bryant contends that Warrior had no involvement in "rehiring" Sexton, doc. 60-3 at 4.  On the other hand, Partin, Alaco's managing member, attests that Warrior employed Sexton from January 1, 2016 to March 31, 2016, and Cordova employed Sexton from April 1, 2016 to December 31, 2016.  Doc. 60-2 at 2.

[13] Even if Warrior or Prospect employed Sexton, they would still prevail on the assault and battery claim.  Bryant attests that they did not know about Sexton's wrongful conduct until after Zavala's discharge, or referral back to HELP.  Doc. 63-6 at 7.  Zavala's conclusory allegations that Laws and Parton informed "Bryant of the daily events and occurrences at the Mine" and Bryant "was aware of the conduct and racial discrimination with Hispanics," doc. 75-1 at 7, are not sufficient to create a question of fact regarding Warrior and Prospect's knowledge of the alleged assaults.  *See Leigh*, 212 F.3d at 1217.  Consequently, because Zavala has not shown that Warrior and Prospect had actual knowledge of Sexton's tortious conduct, they could not have ratified the conduct.

Sexton's employer—the Prospect Mining Defendants, including Cordova, assert that Alaco employed Sexton and that Cordova was simply a "payroll provider," docs. 63-11 at 5; 64 at 25, while Alaco asserts that Cordova employed Sexton, docs. 60-2 at 1-2; 61 at 19; 80 at 7. For his part, Sexton attests that Cordova hired him on April 1, 2016, and he was employed by Cordova in the summer of 2016, and "became employed by" Alaco in 2017. Doc. 60-3 at 2. This evidence creates a question of fact regarding whether Alaco, Cordova, or both, employed Sexton during the relevant time. Consequently, neither Alaco nor Cordova is entitled to summary judgment on the grounds that it cannot be vicariously liable for Sexton's conduct.

For Alaco or Cordova to be liable for Sexton's intentional torts, Zavala must show that "(1) [Sexton's] wrongful acts were in the line and scope of his employment; or (2) that the acts were in furtherance of the business of the employer; or (3) that the employer participated in, authorized, or ratified the wrongful acts." *Potts v. BE & K Constr. Co.*, 604 So. 2d 398, 400 (Ala. 1992). There is nothing to suggest that Sexton's actions were in the line and scope of his employment or furthered the business of Alaco and Cordova. *See* docs. 74; 75-1. *See also Ex Parte Atmore Comm. Hosp.*, 719 So. 2d at 1194 (recognizing that alleged sexual harassment did not further an employer's business and was not within the line and scope of an employee's duties). And, there is no allegation that

Alaco and Cordova participated in or authorized Sexton's wrongful acts. *See* docs. 38; 75-2. Thus, whether these defendants may be vicariously liable for assault and battery hinges on whether they ratified Sexton's conduct.

Ratification requires Zavala to show that Alaco and Cordova: "(1) had actual knowledge of the tortious conduct of [Sexton] and that the tortious conduct was directed at and visited upon [Zavala]; (2) that based on this knowledge, [Alaco and Cordova] knew, or should have known, that such conduct constituted sexual harassment and/or a continuing tort; and (3) that [Alaco and Cordova] failed to take 'adequate' steps to remedy the situation." *Potts*, 604 So. 2d at 400. "Adequate" steps are those that are "reasonably calculated to halt the harassment." *Id.* at 401; *Ex Parte Atmore Comm. Hosp.*, 719 So. 2d at 1195.

The parties do not dispute that Alaco and Cordova had actual knowledge of the alleged assaults and that the conduct constituted sexual harassment or assault. *See* docs. 64 at 27; 61 at 18-19; 74. But, the Corporate Defendants contend that Alaco and Cordova took adequate steps to remedy the situation because Parton and Laws investigated the alleged assault after receiving the report of Zavala's complaint from Hernandez. *See* doc. 64 at 27-28. However, it is undisputed that the defendants did not talk to Zavala about the alleged assaults, or to Adolfo Garcia who attests that he witnessed the assaults and similar conduct against other Hispanic employees. *See* docs. 75-1 at 3-5; 75-2 at 6-8. *See also* doc. 60-2. In

addition, Laws could only identify three employees he spoke to during his investigation of the alleged assault. *See* doc. 60-4. Finally, there is nothing to indicate that Laws took any steps after Zavala allegedly reported the first assault to him, *see* docs. 75-1; 60-4, and Sexton assaulted Zavala again after Zavala's first complaint. "[E]vidence that an employer, after learning of the tortious conduct, failed to stop the tortious conduct of the offending employee presents a question of fact, unique under the circumstances of each case, as to whether the steps taken to stop the conduct were adequate.'" *Machen v. Childersburg Bancorporation, Inc.*, 761 So. 2d 981, 986 (Ala. 1999) (quoting *Potts*, 604 So. 2d at 401). Consequently, based on the serious nature of Sexton's alleged conduct and the limited record before the court, Alaco and Cordova have not shown that their response to Zavala's complaint was adequate as a matter of law, and a jury could find that Alaco and Cordova's response was not reasonably calculated to stop Sexton's alleged conduct. Thus, genuine issues of material fact exist regarding whether Alaco and Cordova ratified Sexton's tortious conduct, and they are not entitled to summary judgment on the assault and battery claim.

### 2. Invasion of Privacy (Second Count III)

Zavala pleads this claim against Sexton and the Corporate Defendants. A plaintiff can establish an invasion of privacy claim under Alabama law by showing "'the wrongful intrusion into [his] private activities in such a manner as to outrage

31

or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.'" *Stancombe*, 652 F. App'x at 738 (quoting *McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649, 651 (Ala. 1986)). This "has been defined as the 'intentional interference with another's interest in solitude or seclusion, either as to his person or to his private affairs or concerns,'" and requires the plaintiff to show "an offensive or objectionable prying or intrusion . . . ." *Busby v. Truswal Sys. Corp.*, 551 So. 2d 322, 323-24 (Ala. 1989) (quotations omitted). Sexual harassment may constitute an invasion of privacy when it involves "'something in the nature of prying and intrusion' and 'the intrusion must be something which would be offensive or objectionable to a reasonable person.'" *Stevenson v. Precision Standard, Inc.*, 762 So. 2d 820, 826 (Ala. 1999) (quoting *Busby*, 551 So. 2d at 323) (emphasis in original omitted).

According to Zavala, Sexton intruded upon his physical solitude by assaulting him on two occasions. Doc. 74 at 21. While there is no evidence suggesting that Sexton pried into Zavala's private affairs or made coercive sexual demands, Sexton's alleged conduct involved unwanted physical contact and intrusions on Zavala's physical person. *See* doc. 75-2 at 4. Indeed, Sexton's alleged acts go far beyond mere "horse play" as the Prospect Mining Defendants incredibly and wrongly suggest, doc. 64 at 21, caused Zavala to suffer humiliation and shame, *see* doc. 75-2 at 9, and is conduct that is objectionable to a reasonable

person. Thus, based on Zavala's statement showing that Sexton physically intruded on Zavala's physical space and person in an offensive manner, *see* doc. 75-2 at 4, Sexton has not met his burden of showing that he is entitled to summary judgment on the invasion of privacy against him. *See Thornton v. Flavor House Products, Inc.*, 2008 WL 5328492, *16 (M.D. Ala. Dec. 19, 2008) (recognizing that an invasion of privacy claim may exist when a plaintiff shows the "harassment is offensive in a way that intrudes or pries, such as by . . . entering into her physical or emotional space") (emphasis omitted).

As to the claims against the Corporate Defendants, Zavala has not shown any basis for holding Warrior and Prospect vicariously liable for Sexton's actions because he has not shown that they employed Sexton or had actual knowledge of Sexton's conduct during the relevant time. *See* docs. 72 at 21; 75-1, p. 28, *supra*. Therefore, the invasion of privacy claim against them fails. However, as discussed above, genuine issues of material fact exist regarding whether Alaco and Cordova employed Sexton and ratified his tortious conduct, *see* p. 28-31, *supra*, and they are not entitled to summary judgment on the invasion of privacy claim.

3.     Outrage (Count IV)

Zavala pleads this claim against Sexton.  Under Alabama law, outrage claims are reserved for conduct so "outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as

atrocious and utterly intolerable in a civilized society." *Tinker v. Beasley*, 429 F.3d 1324, 1329-30 (11th Cir. 2005) (citing *American Rd. Svc. Co. v. Inmon*, 394 So. 2d 361, 365 (Ala. 1980)).  The Supreme Court of Alabama has applied this test strictly, recognizing the tort in only a few areas:  wrongful conduct in the family burial context, insurance agents coercing settlement of insurance claims with "barbaric methods," extremely egregious sexual harassment, and a physician having a sexual relationship with a teenage patient in exchange for narcotics. *See O'Rear v. B.H.*, 69, So. 3d 106, 119 (Ala. 2011), *abrogated on other grounds by Ex parte Vanderwall*, 201 So. 3d 525 (Ala. 2015); *Ex parte Crawford & Co.*, 693 So. 2d 458, 460 n.1 (Ala. 1997).  While sexual harassment and harassment based on race or national origin have no place in a civilized society, under the stringent standard applicable to the tort of outrage in Alabama, Zavala has failed to introduce sufficient evidence to create a question of material fact regarding his claim, and Sexton is entitled to summary judgment on the claim. *See Stancombe*, 652 F. App'x 729; *Turner v. Hayes*, 719 So. 2d 1184, 1187 (Ala. Civ. App. 1997).

### 4.  Negligent Hiring and Retention (Count V)

Zavala pleads a claim for negligent hiring and retention against the Corporate Defendants.  To prove negligent hiring and retention, Zavala, "'must establish 'by affirmative proof' that the employer actually knew of [Sexton's] incompetency, or that the employer reasonably should have known of it."

*Southland Bank v. A & A Drywall Supply Co.*, 21 So. 3d 1196, 1215-16 (Ala. 2008). In addition, Sexton's "incompetency 'must be habitual, rather than occasional, or of such a character as to render it imprudent to retain him in service.'" *Stancombe*, 652 F. App'x at 739 (quoting *First Nat'l Bank of Montgomery v. Chandler*, 39 So. 822, 828 (1905)). Here, Zavala asserts the Corporate Defendants "knew or should have known that Sexton would repeat his act" of sexual assault and battery, and that they failed to protect Zavala by discharging Sexton. Doc. 38 at 17. But, as mentioned above, Zavala has not established that either Warrior or Prospect knew about the alleged assaults by Sexton before Zavala filed his EEOC charge, or that Warrior and Prospect employed Sexton during the relevant time. *See* doc. 63-6 at 7; pp. 28, *supra*. Accordingly, these two defendants are due summary judgment on the negligent hiring and retention claim them.

But, as to Cordova and Alaco, a question of fact exists regarding whether these defendants employed Sexton, and the Corporate Defendants do not dispute that Alaco and Cordova had knowledge of Sexton's alleged conduct. Doc. 64 at 31-32. *See also*, pp. 28-30, *supra*. Sexton's alleged conduct is "of such a character to render it imprudent to retain him in service," *Stancombe*, 652 F. App'x at 739, without taking adequate steps to address the conduct and protect Zavala. And, as mentioned above, nothing in the record suggests Alaco or Cordova took

any action after Zavala allegedly reported the first assault to Laws, and Sexton then assaulted Zavala again.  *See* pp. 30-31, *supra*.  As a result, Alaco and Cordova have not shown they are entitled to summary judgment on the claim.

### 5.    Breach of Implied Contract and Warranty (Count VI)

Zavala contends that the Corporate Defendants breached an implied contract with him by failing to provide him with a safe working environment and protecting him from a known risk of harm.  Docs. 38 at 18; 74 at 24-25.[14]  But, nothing in the record suggests the existence of an implied contract or warranty between Zavala and any of the Corporate Defendants.  And, Zavala cites no authority for the proposition that Alabama courts recognize an implied contract or warranty for an employer to keep an employee safe from sexual harassment, *see* docs. 72; 74, and the court is aware of no such authority.  Moreover, finding that the law implies a promise on the part of an employer to keep a workplace free of sexual harassment would contravene the "well-settled" law that "Alabama does not recognize an independent cause of action for sexual harassment."  *Stevenson*, 762 So. 2d at 824 n.6 (citations omitted).  Therefore, the breach of implied contract and warranty claims fail as a matter of law.

---

[14] Zavala also asserts in his breach of implied contract or warranty claim that "Alaco and Parton have hidden facts, and have spoiled evidence to avoid their own liability."  Doc. 38 at 18.  But, that allegation seems to have no relation to the claim.  Moreover, in his summary judgment briefing, Zavala provides no evidence or argument related to a suppression or spoliation claim, *see* docs. 72; 74, and has, therefore, abandoned any such claim, *see Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[G]rounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned.").

### 6. Negligence/Wantonness (Count VII)

Zavala pleads a claim for negligence against all defendants except Sexton. To prevail on his negligence and wantonness claims, Zavala must show that the defendants owed a duty to him and breached that duty. *See, e.g., Smith v. AmSouth Bank, Inc.*, 892 So. 2d 905, 909 (Ala. 2004). According to Zavala, the defendants breached a duty they owed to him by retaining Sexton, and failing to assign Zavala to another supervisor or a safer place after Zavala complained about Sexton. Docs. 38 at 18-19; 74 at 25. This claim is flawed in several respects. To begin, Zavala did not cite any authority recognizing a common law duty for an individual to address sexual harassment in the workplace, and the court is aware of no such authority.[15] Next, the claims against Warrior and Prospect fail for the same reasons the assault and battery and negligent hiring and retention claims. *See* pp. 28, 35, *supra*. Thus, the individual defendants, Warrior, and Prospect are entitled to summary judgment on the negligence/wantonness claim.

With respect to Alaco and Cordova, Zavala pleads that these defendants negligently or wantonly supervised Sexton by failing to discharge Sexton or to assign Zavala to another supervisor or different place in the Mine. *See* doc. 38 at 18-19. Because "the manner in which a sexual-harassment complaint is handled

---

[15] The court raised this issue in its order on Bryant's motion to dismiss, doc. 54 at 5, but Zavala still failed to address it in his opposition to the defendants' motions for summary judgment. *See* doc. 74.

when sexual harassment has, in fact, occurred could form the basis for a claim for negligent or wanton supervision," *Stevenson*, 762 So. 2d at 825 (citing *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885 (Ala. 1995)), Alaco and Cordova have not shown they are entitled to summary judgment for the same reasons that the court denied their motion on the negligent hiring and retention claim. *See* pp. 34-36, *supra*.

7.     Wrongful Discharge (Count VIII)

Finally, Zavala asserts the Corporate Defendants wrongfully discharged him. Doc. 38 at 20. However, the Supreme Court of Alabama "has steadfastly declined to modify the employee-at-will doctrine by recognizing a cause of action sounding in tort for the wrongful termination of an employment contract when the employer's actions were in contravention of [Alabama's] public policy . . . ." *Grant v. Butler*, 590 So. 2d 254, 256 (Ala. 1991) (citations omitted). In other words, Alabama does not recognize a claim for wrongful discharge relating to an employee's assertion of federal rights under Title VII or § 1981. Therefore, Zavala's wrongful discharge claim fails as a matter of law.

## V.     CONCLUSION

For the reasons discussed above, Zavala's motion to have matters deemed admitted, doc. 69, and the parties' motions to strike, docs. 70, 81, 82, 87, are due to be denied. The Alaco Defendants' motion for summary judgment, doc. 59, is due

to be denied as to the invasion of privacy claim against Sexton, and the assault and battery, invasion of privacy, negligent hiring and retention, and negligence/wantonness claims against Alaco. The Prospect Mining Defendants' motion for summary judgment, doc. 62, is due to be denied as to the assault and battery, invasion of privacy, negligent hiring and retention, and negligence/wantonness claims against Cordova. The motions for summary judgment are due to be granted in all other respects. A separate order will be entered.

**DONE** the 5th day of September, 2019.

**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE